## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| A-1 EXPRESS DELIVERY SERVICE, INC., | ) | CASE NO. 17-52865-pmb |
| | ) | |
| Debtor. | ) | |
| | ) | |

### EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL

COME NOW A-1 Express Delivery Service, Inc. (the "**Debtor**") in the above-styled Chapter 11 case (the "**Case**"), pursuant to 11 U.S.C. § 363 and Bankruptcy Rule 4001, and files this Motion for Authority to Use Cash Collateral (the "**Motion**") seeking entry of an order authorizing the Debtor to use cash collateral. In support of the Motion, the Debtor shows the Court as follows.

### Jurisdiction and Venue

1.

This Court has jurisdiction of this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this proceeding is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

2.

On February 14, 2017 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtor is authorized to operate its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. As of the date of this filing, no official committee of

unsecured creditors has been appointed, and no request for the appointment of a trustee or examiner has been made.

3.

The Debtor is a leading provider of same-day transportation and distribution services across the country. From its headquarters in midtown Atlanta, the Debtor manages the transportation, distribution and logistics for well over 1500 active clients, including many Fortune 500 companies with operations throughout the United States. The Debtor provides next day services for Amazon in 5 cities, employing over 300 drivers. Additionally, the Debtor operates 2 same-day florist locations in Atlanta and Los Angeles.

4.

Summit Financial Resources, L.P. ("**Summit**") made certain loans to the Debtor pre-petition for which it contends it is owed in excess of $1,325,878. In connection therewith, Summit may assert liens and security interests in some or all of the Debtor' personal property used in the operation of their businesses (the "**Property**"), which consists of, *inter alia*, accounts, inventory, furniture, fixtures and equipment, and general intangibles. Summit may also assert that the proceeds received from Property consisting of accounts receivable is "cash collateral" as defined in 11 U.S.C. § 363(a). Additionally, ACH Capital, Corporation Service Company (as representative), Funding Strategy Partners, AccuCredit Associates, LLC, and SunTrust Bank (collectively, the "**Potential Secured Creditors**") may assert blanket security interests in the Property (and said cash collateral) pursuant to the terms of certain agreements.[1] However, upon information and belief, the Potential Secured Creditors (to the extent that they hold valid, perfected liens), are junior in priority to Summit. Further, the Debtor believes and asserts that

---

[1] The listed names are taken from UCC-1 filings against the Debtor. It is possible that the entities listed transact business with the Debtor under different trade names.

some or all of the Potential Secured Creditors do not hold valid secured claims against the Debtors.  Accordingly, the Potential Secured Parties' claims, if any, are currently in dispute.

**Relief Requested**

5.

The Debtor seeks entry of an order authorizing the use of cash collateral in accordance with a proposed budget attached hereto as <u>Exhibit A</u>.

6.

The Debtor's use of cash collateral is essential to the continued operation of its business, to maintain the value of the Property and for an effective reorganization.  The Debtor does not propose to use cash collateral to pay any amounts due and owing prior to the Petition Date absent further order of the Court.  However, because of the nature of the Debtor's business, it must have use of cash collateral to meet its ongoing obligations and to preserve the value of its assets.  Therefore, the use of cash collateral is in the best interest of the Debtor, its estate and its creditors.

7.

The Debtor is willing to provide adequate protection for the use of cash collateral as follows:

(a) Summit and the Potential Secured Creditors shall be given a replacement lien in post-petition accounts receivable and proceeds thereof to the extent such pre-petition liens are a valid, properly perfected and enforceable interest, and in the same relative priority; and

(b) Cash collateral may only be used for items set forth in a budget to be approved by the Court.

WHEREFORE, the Debtor requests that this Court: (a) schedule a hearing on this Motion to be heard on or before February 16, 2017; (b) enter an order granting this Motion at the conclusion of such hearing, in substantially the form attached hereto as <u>Exhibit B</u>; and (c) grant the Debtor such other and further relief as is just and proper.

This 15th day of February, 2017.

Respectfully submitted,

SCROGGINS & WILLIAMSON, P.C.

| | |
|---|---|
| One Riverside | /s/ Matthew W. Levin |
| 4401 Northside Parkway | J. ROBERT WILLIAMSON |
| Suite 450 | Georgia Bar No. 765214 |
| Atlanta, Georgia 30327 | ASHLEY REYNOLDS RAY |
| T: (404) 893-3880 | Georgia Bar No. 601559 |
| F: (404) 893-3886 | MATTHEW W. LEVIN |
| E: rwilliamson@swlawfirm.com | Georgia Bar No. 448270 |
|    aray@swlawfirm.com | |
|    mlevin@swlawfirm.com | *Proposed Counsel for the Debtor* |

# **Exhibit A**

Budget

| Week Ending | 2/10/2017 Actuals | 2/17/2017 | 2/24/2017 | 3/3/2017 | 3/10/2017 | 3/17/2017 | 3/24/2017 | 3/31/2017 |
|---|---|---|---|---|---|---|---|---|
| **Starting Cash Balance** | $15,000.00 | $10,125.00 | $162,825.00 | $400,800.00 | -$33,575.00 | -$37,450.00 | $194,725.00 | $400,850.00 |
| **Forecasted Collections** | | | | | | | | |
| Cash Transfers (Summit) | $328,000.00 | $360,000.00 | $328,000.00 | $430,000.00 | $328,000.00 | $360,000.00 | $328,000.00 | $430,000.00 |
| Peachtree Petals | $27,500.00 | $55,000.00 | $57,500.00 | $27,500.00 | $27,500.00 | $77,500.00 | $27,500.00 | $27,500.00 |
| Socal Petals | $10,000.00 | $25,000.00 | $25,000.00 | $10,000.00 | $10,000.00 | $35,000.00 | $10,000.00 | $10,000.00 |
| Other Sources (5th 3rd, PNC) | $55,000.00 | $55,000.00 | $55,000.00 | $55,000.00 | $55,000.00 | $55,000.00 | $55,000.00 | $55,000.00 |
| **Total Cash Inflow** | **$420,500.00** | **$495,000.00** | **$465,500.00** | **$522,500.00** | **$420,500.00** | **$527,500.00** | **$420,500.00** | **$522,500.00** |
| COS - Affiliate Charges | $34,000.00 | $34,000.00 | $34,000.00 | $34,000.00 | $34,000.00 | $34,000.00 | $34,000.00 | $34,000.00 |
| COS - Flower Shops | $13,875.00 | $29,600.00 | $30,525.00 | $13,875.00 | $13,875.00 | $41,625.00 | $13,875.00 | $13,875.00 |
| Google Adwords | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 |
| Computers | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 |
| FTD | $10,000.00 | $20,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 |
| Driver Compensation - IC's | $26,500.00 | $26,500.00 | $31,000.00 | $26,500.00 | $26,500.00 | $26,500.00 | $26,500.00 | $26,500.00 |
| Driver Compensation - EE's | $330,000.00 | | | $328,000.00 | $290,000.00 | | | $325,000.00 |
| Inside Staff Payroll | | $135,000.00 | $140,000.00 | $140,000.00 | | $125,000.00 | | $135,000.00 |
| Recruiting | $1,000.00 | $5,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $5,000.00 | $1,000.00 | $1,000.00 |
| Google Adword | $3,000.00 | $3,500.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 |
| Rent | | | | $32,000.00 | | | | |
| Utilities | | $4,200.00 | | | $4,200.00 | | | |
| Office Expenses | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 |
| Vehicle Repairs & Maintenance | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 |
| Vehicle Fuel | $17,500.00 | $17,500.00 | $17,500.00 | $17,500.00 | $17,500.00 | $17,500.00 | $17,500.00 | $17,500.00 |
| Vehicle Leases | | | | $165,000.00 | | | | |
| Interest | $4,000.00 | $7,500.00 | $4,000.00 | $21,500.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 |
| Communications | | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 |
| Professional Fees | | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 |
| Insurance???? | | $35,000.00 | | $140,000.00 | | | | |
| Health Insurance | | | $60,000.00 | | | | $60,000.00 | |
| Sales Tax | | | $12,000.00 | | | | $20,000.00 | |
| **Total Cash Outflow** | **$425,375.00** | **$342,300.00** | **$227,525.00** | **$956,875.00** | **$424,375.00** | **$295,325.00** | **$214,375.00** | **$594,375.00** |
| **Net Cash Flow** | **-$4,875.00** | **$152,700.00** | **$237,975.00** | **-$434,375.00** | **-$3,875.00** | **$232,175.00** | **$206,125.00** | **-$71,875.00** |
| **Ending Cash Balance** | $10,125.00 | $162,825.00 | $400,800.00 | -$33,575.00 | -$37,450.00 | $194,725.00 | $400,850.00 | $328,975.00 |
| **Actual Cash Balance** | | | | | | | | |
| Variance | | | | | | | | |
| **Net Cash Flow (Actual)** | | | | | | | | |

| 4/7/2017 | 4/14/2017 | 4/21/2017 | 4/28/2017 | 5/5/2017 |
|---|---|---|---|---|
| $328,975.00 | $260,600.00 | $240,025.00 | $411,150.00 | |
| $328,000.00 | $328,000.00 | $410,000.00 | $328,000.00 | |
| $27,500.00 | $57,500.00 | $27,500.00 | $27,500.00 | |
| $10,000.00 | $30,000.00 | $10,000.00 | $10,000.00 | |
| $55,000.00 | $55,000.00 | $55,000.00 | $55,000.00 | |
| **$420,500.00** | **$470,500.00** | **$502,500.00** | **$420,500.00** | |
| $34,000.00 | $34,000.00 | $34,000.00 | $34,000.00 | |
| $13,875.00 | $32,375.00 | $13,875.00 | $13,875.00 | |
| $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | |
| $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | |
| $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | |
| $26,500.00 | $26,500.00 | $26,500.00 | $26,500.00 | |
| | $330,000.00 | $325,000.00 | | |
| $1,000.00 | $5,000.00 | $1,000.00 | $1,000.00 | $135,000.00 |
| $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | |
| $32,000.00 | | $125,000.00 | | |
| $1,500.00 | $4,200.00 | | | |
| $10,000.00 | $1,500.00 | $1,500.00 | $1,500.00 | |
| $17,500.00 | $10,000.00 | $10,000.00 | $10,000.00 | |
| $165,000.00 | $17,500.00 | $17,500.00 | $17,500.00 | |
| $21,500.00 | $4,000.00 | $4,000.00 | $4,000.00 | |
| $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | |
| $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | |
| ==$140,000.00== | | | | |
| | | $60,000.00 | | |
| | | $12,000.00 | | |
| **$488,875.00** | **$491,075.00** | **$331,375.00** | **$459,375.00** | |
| **-$68,375.00** | **-$20,575.00** | **$171,125.00** | **-$38,875.00** | |
| $260,600.00 | $240,025.00 | $411,150.00 | $372,275.00 | |

## **Exhibit B**

Proposed Order

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: ) | CHAPTER 11 |
| ) | |
| A-1 EXPRESS DELIVERY SERVICE, INC., ) | CASE NO. 17-52865-pmb |
| ) | |
| Debtor. ) | |
| ) | |

**INTERIM ORDER ON DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL AND NOTICE OF FURTHER HEARING**

This matter came before the Court for hearing on February 16, 2017 (the "**Hearing**") on the *Emergency Motion for Authority to Use Cash Collateral* (the "**Motion**") filed on February 15, 2017 [Dkt. No. ___], by the Debtor, A-1 Express Delivery Service, Inc. (the "**Debtor**"), in the above-captioned chapter 11 case, (1) requesting authority to use Cash Collateral (as defined below) pursuant to Section 363 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**") and (2) seeking authorization to provide adequate protection to (a) Summit Financial Resources, L.P. ("**Summit**"), as secured lender under the Loan and Security Agreement dated June 10, 2016 (hereinafter, together with all amendments, exhibits and schedules thereto and modifications thereof, the "**Pre-Petition Credit Agreement**"), between Summit and Debtor, and (b) ACH Capital, Corporation Service Company (as representative), Funding Strategy Partners, AccuCredit Associates, LLC, and SunTrust Bank (collectively, the "**Potential Secured Creditors**").

Based upon the Court's consideration of the Motion, and all matters brought to the Court's attention at the Hearing, pursuant to Rules 4001(b) and (d) of the Federal Rules of Bankruptcy Procedure, and after due deliberation and consideration, the Court, based on the representations made on an interim basis, makes the following findings of fact and conclusions

of law applicable to the Debtor's use of Cash Collateral (to the extent any findings of fact constitute conclusions of law, they are adopted as such, and *vice versa*)

A. **Petition Date**. On February 14, 2017 (the "**Petition Date**"), the Debtor filed with the Court its voluntary petition for relief under Chapter 11 of the Bankruptcy Code and is continuing to manage its properties and to operate its business as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed.

B. **Pre-Petition Debt and Liens.**

(1) Summit asserts that, as of the Petition Date, the Debtor was indebted to Summit for revolving credit loans in the approximate principal amount of $1,325,878 (the "**Obligations**"). As security for the payment of the Obligations, the Debtor granted to Summit pursuant to the Pre-Petition Credit Agreement and related documents (collectively, the "**Pre-Petition Loan Documents**"), security interests in and liens (collectively, the "**Pre-Petition Liens**") upon all of the Debtor's (i) accounts, payment intangibles, instruments, intercompany claims, and other rights to receive payments of the Debtor (including, without limitation, the accounts), whether now existing or hereafter arising or acquired, (ii) related general intangibles (including, without limitation, contract rights and intellectual property), chattel paper, documents, supporting obligations, letter-of-credit rights, commercial tort claims set forth in schedules to the Pre-Petition Credit Agreement, remedies, guarantees and collateral evidencing, securing or otherwise relating to or associated with the property in subpart (i) above, including, without limitation, all rights of enforcement and collection, (iii) commercial lockboxes, government lockboxes and collection accounts, (iv) funds received thereby or deposited therein, and any checks or instruments from time to time representing or evidencing the same, (v) books and records of the Debtor evidencing or relating to or associated with any of the foregoing,

2

(vi) information and data compiled or derived by the Debtor with respect to any of the foregoing (other than any such information and data subject to legal restrictions of patient confidentiality), and (vii) collections, accessions, receipts and all proceeds of any and all of the foregoing (all such personal property, as the same existed on the Petition Date, together with all cash and non-cash proceeds thereof, the "**Pre-Petition Collateral**").

(2) The Potential Secured Creditors may assert that the Debtors are indebted to the Potential Secured Creditors in various amounts, secured by some or all of the Pre-Petition Collateral.

C. **Need for Use of Cash Collateral.** The Debtor requires the use of Cash Collateral to continue operating its business, including making payroll, paying vendors and suppliers for post-petition obligations, and meeting ordinary working capital expenses. Potentially irreparable harm to the Debtor, its creditors and its estate may occur absent authorization for the use of Cash Collateral.

D. **Service of Motion; Objections**. The Debtor has certified that copies of the Motion and notice of the Hearing have been served by electronic mail, telecopy transmission, hand delivery, overnight courier or first class United States mail upon the Office of the United States Trustee (the "**United States Trustee**"), Summit, the Potential Secured Creditors, parties identified on the Debtor's list of 20 largest unsecured creditors, and all parties who had filed requests for notices under Rule 2002 of the Bankruptcy Rules as of the date of the Motion. The Court finds that notice of the Motion, as it relates to this Order, is sufficient for all purposes under the Bankruptcy Code and the Bankruptcy Rules, including, without limitation, Sections 102(1) and 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b) and (d).

3

E.   **Finding Cause**.  Good cause has been shown for the entry of this Order, the granting of adequate protection as set forth herein and authorization for the Debtor to use Cash Collateral during the Interim Period (as defined below).  The Debtor's need for use of Cash Collateral is ongoing, immediate and critical.  Entry of this Order will preserve the assets of Debtor's estate and its value and is in the best interests of the Debtor, its creditors and the Debtor's estate.

F.   **Jurisdiction; Core Proceeding; Venue**.  This Court has jurisdiction to enter this Order pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes a core proceeding, as defined in 28 U.S.C. § 157(b)(2).  Venue for this Chapter 11 case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

G.   **Adequate Protection.**  Summit has requested and is entitled to adequate protection of its interests in the Pre-Petition Collateral under 11 U.S.C. §§ 361 and 363 as set forth herein.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, as follows:

1.   **Grant of Motion; Authority to Use Cash Collateral**.

(a)   Subject to all of the terms, conditions and limitations of this Order, the Debtor shall be authorized to use Cash Collateral (as defined below) for Permitted Purposes (as defined below) during the period (the "**Interim Period**") commencing on February 16, 2017, and ending on the date of the Interim Hearing (defined below).  The Interim Period may be extended by written agreement of the Debtor and Summit.

(b)   The term "**Cash Collateral**" shall mean all monies (i) in the possession of the Debtor on the Petition Date consisting of Pre-Petition Collateral, (ii) received by the Debtor after

4

the Petition Date in respect of or arising out of Debtor's use, sale, consumption, collection, or other disposition of any Pre-Petition Collateral or Replacement Collateral (as defined below), (iii) all monies in the possession of Summit on the Petition Date that were collected from receivables generated by the Debtor, or (iv) received by Summit after the Petition Date in respect of or arising out of Debtor's receivables.

(c) The term "**Permitted Purposes**" shall mean the use by the Debtor of Cash Collateral in the ordinary course of the Debtor's business solely for the purposes of supporting the Debtor's ongoing working capital needs, to the extent and up to the amounts set forth in the budget attached to this Order (as may be amended with the written consent of Summit and the Debtor, the "**Budget**"), including a ten percent (10%) permitted variance on aggregate disbursements during any calendar week. Notwithstanding the foregoing, no Cash Collateral may be used pursuant to the Budget or otherwise to pay any pre-petition claim against the Debtor other than amounts specifically approved by the Court after notice and hearing.

2. **Collection of Accounts Receivable; Use of Blocked Accounts**. The Debtor shall diligently attempt to collect all of its pre-petition and post-petition accounts receivable and all other rights to the payment of money and shall cause all such collections remitted by its customers and other account obligors to be promptly deposited in the lockbox maintained by Summit, as applicable under (and defined in) the Pre-Petition Credit Agreement, which may consist of lockbox or deposit accounts in existence prior to the Petition Date and used in connection with the Debtor's pre-petition cash management system. For so long as the Debtor is authorized to use Cash Collateral hereunder, Summit shall transfer to the Debtor's debtor-in-possession operating account after entry of this Order, and thereafter on each business day during the Interim Period, all fully collected funds received in the Collection Account (as defined in the

5

Pre-Petition Credit Agreement) until the aggregate amount of collections of receivables remitted to the Debtor's operating accounts equals the amount that the Debtor is permitted to use during the Interim Period under the Budget.  Nothing in this Order shall be construed to require Summit to extend credit, approve overdrafts or make available to the Debtor any funds received by Summit that are not good, collected funds at such time.  Summit shall be authorized to deduct from Cash Collateral amounts sufficient to pay and to be used to pay reasonable and customary fees and expenses associated with the wiring or other transfer of such funds and administration and maintenance of the lockbox and deposit accounts used to collect receivables.

3. **Cash Collateral Subject to Summit's Liens**.  Until expended by the Debtor, all Cash Collateral shall remain subject to the liens and claims of Summit under the Pre-Petition Loan Documents and this Order.

4. **Termination of Authority to Use Cash Collateral**.  The Debtor's authority to use Cash Collateral shall automatically terminate for all purposes (except to pay the Pre-Petition Debt) upon the soonest to occur of the following events or conditions:  (i) the Interim Period expires; (ii) a Chapter 11 trustee is appointed; (iii) this Chapter 11 case is converted to a Chapter 7 case or dismissed; (iv) the Court enters an order granting Summit relief from the automatic stay or prohibiting the use of Cash Collateral by the Debtor; or (v) this Order is amended, vacated, stayed, reversed or otherwise modified without the prior written consent of Summit.

5. **Adequate Protection**.  As adequate protection for any diminution in the value of Summit's and the Potential Secured Creditors' respective interests in the Pre-Petition Collateral, including, without limitation, any diminution resulting from the use of Cash Collateral, Summit and the Potential Secured Creditors are hereby granted (in the same priority as existed in the Pre-Petition Collateral, and only to the extent that the prepetition liens and interests of Summit and

6

the Potential Secured Creditors are valid, binding, enforceable and non-avoidable), pursuant to Sections 361, 362 and 363 of the Bankruptcy Code, valid, binding, enforceable and automatically perfected liens on and security interests in (collectively, the "**Adequate Protection Liens**") (i) all personal property of the Debtor that is of a kind or nature described as Collateral in the Pre-Petition Loan Documents (in the case of Summit) and the agreements, if any, with the Potential Secured Creditors (in the case of the Potential Secured Creditors), whether existing or arising prior to, on or after the Petition Date, and (ii) all other personal property of the Debtor, wherever located and whether created, acquired or arising prior to, on or after the Petition Date, including, without limitation, all of the Debtor's goods (including, without limitation, inventory and equipment), chattel paper, instruments (including all promissory notes), documents, deposit accounts, letters of credit, banker's acceptances, letter-of-credit rights, supporting obligations, investment property (including securities, whether certificated or uncertificated, securities accounts, security entitlements, commodity contracts or commodity accounts), monies, credit balances, deposits, commercial tort claims, books and records, vehicles, and intellectual property (all such personal property, together with all cash and non-cash proceeds thereof, being hereinafter referred to as the "**Replacement Collateral**"; and together with the Pre-Petition Collateral, the "**Collateral**").  Notwithstanding the foregoing, the Replacement Collateral shall not include any claims or causes of action of the Debtor under 11 U.S.C. §§ 544, 547, 548 or 550 ("**Avoidance Actions**") or any proceeds of any of such claims or causes of action ("**Avoidance Proceeds**").  The Adequate Protection Liens shall at all times be senior to the rights of the Debtor and any successor trustee or estate representative of the Debtor's estate, and any security interest or lien upon the Debtor's assets that is avoided or otherwise preserved for the benefit of the Debtor's estate under Section 551 or any other provision of the Bankruptcy Code shall be

7

subordinate to the Adequate Protection Liens. The Adequate Protection Liens and all claims, rights, interests, administrative claims and other protections granted to or for the benefit of Summit and the Potential Secured Creditors pursuant to this Order and the Bankruptcy Code shall constitute valid, enforceable, non-avoidable and duly perfected security interests and liens. Summit and the Potential Secured Creditors shall not be required to file or record financing statements, mortgages, deeds to secure debt or similar instruments which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession or control, to validate and perfect such security interests and liens.

6. **Superpriority Claim.** Summit has requested adequate protection and shall be entitled to an administrative priority claim under Section 507(b) of the Bankruptcy Code in the amount, if any, by which the protections afforded herein for the Debtor's use, sale, consumption or disposition of any Pre-Petition Collateral (including, without limitation, Cash Collateral) prove to be inadequate to protect Summit's interest in such Pre-Petition Collateral; provided, however, that nothing in this Order shall prohibit the Debtor from seeking to grant a superpriority claim under Section 364(c)(1) of the Bankruptcy Code (with a priority senior to the administrative priority claims granted to Summit hereunder) to a post-petition debtor-in-possession lender to the Debtor, subject to Summit's right to object and approval of the Court after notice and a hearing.

7. **Access to Premises and Records; Reporting**.

(a) Summit and its respective representatives and agents (including, without limitation, employees, officers, legal counsel, appraisers, auditors, accountants, and consultants) shall be authorized, during normal business hours upon reasonable notice, to conduct on-site field examinations in order to inspect and evaluate the Debtor's property and financial records.

8

(b) The Debtors will continue to provide to Summit all reporting as may be required under the Pre-Petition Loan Documents.

8. **<u>Survival of Provisions of This Order</u>**. The provisions of this Order and any action taken pursuant to the terms hereof shall survive the entry of any order dismissing this Chapter 11 case or converting this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code, and all of the terms and conditions of this Order as well as the liens and security interests granted pursuant hereto shall continue in this or in any superseding case under the Bankruptcy Code, and such liens and security interests shall retain their priorities provided by this Order until satisfied and discharged.

9. **<u>Reservation of Rights</u>**. Nothing in this Order shall constitute or be construed to (a) be an admission by Summit or the Potential Secured Creditors as to the adequacy of the protection provided herein; (b) release, impair or alter in any way the obligations and liability of any guarantor of the Pre-Petition Debt or any subordination of other obligations of the Debtor in favor of prior payment of the Pre-Petition Debt; (c) prohibit Summit or the Potential Secured Creditors from seeking any further relief in this Chapter 11 case, including, without limitation, additional adequate protection, dismissal or conversion, relief from the automatic stay under Section 362(d) of the Bankruptcy Code, the appointment of a trustee or examiner, or the taking of any Bankruptcy Rule 2004 examinations; (d) constitute a waiver by the Debtor, Summit or the Potential Secured Creditors of the right to request in a further interim or final order on Cash Collateral provisions which may be different from or in addition to any of the provisions contained in this Order; or (e) preclude the Debtor, any creditor, any Committee or any subsequently appointed trustee from objecting to or otherwise challenging the validity or amount of the obligations to, or liens asserted by, Summit or the Potential Secured Creditors.

11. **Order Immediately Effective; Survival**. Notwithstanding anything to the contrary in the Federal Rules of Bankruptcy Procedure or otherwise, the effectiveness of this Order shall not be stayed, and this Order shall be immediately effective upon its entry. The provisions of this Order shall survive any dismissal or conversion of this chapter 11 case.

12. **Notice of Further Hearing; Service of Order**. **A further hearing on the Motion will be held at 9:00 a.m. on February 23, 2017, at Courtroom _____, United States Bankruptcy Court, Russell Federal Building, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303** (the **"Further Hearing"**). Promptly after the entry of this Order, the Debtor shall mail, by first class mail, a copy of this Order, the Motion (and all exhibits attached to the Motion), and a notice of the Further Hearing, to counsel for Summit, the Potential Secured Creditors, the United States Trustee, counsel for the Committee (or, if no Committee has been formed, the Debtor's 20 largest unsecured creditors), any creditors holding liens on any of the Pre-Petition Collateral or Replacement Collateral, and all parties who have filed requests for notices under Rule 2002 of the Bankruptcy Rules, and shall file a certificate of service regarding same with the Clerk of the Court. Such service shall constitute good and sufficient notice of the Further Hearing.

## END OF DOCUMENT

Prepared and presented by:

SCROGGINS & WILLIAMSON, P.C.

  /s/ J. Robert Williamson
J. ROBERT WILLIAMSON
Georgia Bar No. 765214
ASHLEY REYNOLDS RAY
Georgia Bar No. 601559
MATTHEW W. LEVIN
Georgia Bar No. 448270

10

One Riverside
4401 Northside Parkway
Suite 450
Atlanta, Georgia 30327
T: (404) 893-3880
F: (404) 893-3886
E: rwilliamson@swlawfirm.com
   aray@swlawfirm.com
   mlevin@swlawfirm.com

11