IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| A-1 EXPRESS DELIVERY SERVICE, INC., | ) | CASE NO. 17-52865-pmb |
| | ) | |
| Debtor. | ) | |
| | ) | |

**MOTION FOR AUTHORITY TO CONTINUE PRE-PETITION**
**INSURANCE PROGRAMS AND TO PAY PRE-PETITION PREMIUMS**

COMES NOW A-1 Express Delivery Service, Inc. (the "**Debtor**") in the above-styled Chapter 11 case (the "**Case**"), by and through the undersigned counsel, and makes and files this *Motion for Authority to Continue Pre-Petition Insurance Programs and to Pay Pre-Petition Premiums* (the "**Motion**"), respectfully showing the Court as follows:

**Relief Requested**

1.

By this Motion, the Debtor seeks entry of an order (a) authorizing it to maintain their insurance programs, insurance policies and any related agreements, as such practices, programs, and policies were in effect as of the Petition Date, and to pay, in its sole discretion, pre-petition amounts accrued in connection therewith, and (b) authorizing applicable banks and other financial institutions to receive, process and pay any and all checks and other transfers related to such claims.

**Jurisdiction**

2.

This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this proceeding is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

3.

On February 14, 2017 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11, Title 11, United States Code (the "**Bankruptcy Code**"). The Debtor is authorized to operate its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4.

The Debtor is a leading provider of same-day transportation and distribution services across the country. From its headquarters in midtown Atlanta, the Debtor manages the transportation, distribution and logistics for well over 1500 active clients, including many Fortune 500 companies with operations throughout the United States. The Debtor provides next day services for Amazon in 5 cities, employing over 300 drivers. Additionally, the Debtor operates 2 same-day florist locations in Atlanta and Los Angeles.

**The Debtor's Insurance Programs**

5.

In connection with the operation of their businesses, the Debtor maintains various insurance policies and programs (collectively, the "**Insurance Programs**") through certain insurance carriers (the "**Insurance Carriers**"). Exhibit A to this Motion is a summary of the Debtor's various insurance policies, including a list of the policy terms.

- 2 -

6.

The Debtor's Insurance Programs include liability, property insurance and worker's compensation policies, which provide the Debtor with insurance coverage relating to, among other things, general liability, workers' compensation, business fleet, and property.

7.

The Debtor is required to pay premiums based upon a fixed rate established by the Insurance Carriers. The premiums for these policies are determined annually and are either (1) directly billed to the Debtor in monthly installments or (2) financed by the Debtor pursuant to a premium finance agreement.

8.

As of the Petition Date, the Debtor believes that it is current on pre-petition premiums billed with respect to the Insurance Programs, other than amounts due with respect to the worker's compensation policy. With respect to the worker's compensation policy, prior to the Petition Date the Insurance Carriers audited the Debtor's prior history, and determined that the Debtor had underpaid for the prior calendar year.[1] Accordingly, the Debtor owed an additional premium for such policy of which approximately $220,000 remains to be paid, split into monthly payments of $36,769.04. There are six remaining payments on such policy audit due in each of February through July of 2017. If the Debtor fails to make such payments, the Insurance Carriers would be entitled to cancel all of the Debtor's Insurance Programs. Accordingly, in order to keep all of its insurance in place, the Debtor seeks to pay these amounts in the ordinary course as such payments are necessary to keep the Insurance Programs in force.

---

[1] The premium for the worker's compensation policy is based on a per employee charge, as well as claims experience throughout the year.

**The Claims Administration Process**

9.

With respect to the Insurance Programs, there are certain self-insured retention and/or deductible amounts set forth in the policy language for each claim, but the Debtor has already prepaid such amounts through the policy year. Accordingly, the deductible amounts for such policies are effectively zero.[2] Claims for losses and expenses are paid by the Insurance Carriers directly to claimants, attorneys, and investigators, as incurred. The Insurance Carriers then assess the prepaid amount for reimbursement of losses and expenses that fall under the deductible amounts set forth in the policy.

10.

Paying expenses such as attorneys' fees and costs of investigation that may fall within the deductible under the Debtor's Insurance Programs is necessary to continue to address and process claims. The Debtor seeks authorization for the payment of such expenses, even if the payment satisfies pre-petition claims of attorneys' fees and costs of investigation.

**Basis for Relief**

11.

This Court has the authority to grant the relief requested herein pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code provides "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Moreover, Section 105(a) of the Bankruptcy Code allows the Court to authorize payments on account of certain pre-petition claims when necessary. Section 105(a) of the Bankruptcy Code provides, in relevant part, that

---

[2] Indeed, based on its claims history, the Debtor may be entitled to a refund of some portion of the prepaid amount at some point in the future.

"[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

### Continuation of the Insurance Programs is in the  
### Best Interests of the Debtor, Its Estate, and All Parties in Interest

12.

Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code, the Debtor seeks authorization to continue the Insurance Programs on an uninterrupted basis, consistent with pre-petition practices, and pay, when due, and in the ordinary course of the Debtor's businesses, all pre-petition premiums, administrative fees, and other pre-petition obligations (collectively, the "**Insurance Obligations**") to the Insurance Carriers to the extent due and payable post-petition.

13.

As stated above, the Debtor's insurance policies either involve deductible amounts or a self-insured retention for each claim that is submitted.  To the extent a deductible payment, self-insured retention payment, or reimbursement relating to a period prior to the Petition Date is outstanding with respect to any of the insurance policies, the Debtor seeks authority, in its discretion, to make such payments in the same manner that such payments were made prior to the Petition Date.  The Debtor does not seek authority at this time to pay pre-petition claims (*e.g.*, of injured parties) that fall within the deductible or self-insured retention amounts.

14.

It is essential to the continued operation of the Debtor's business and its efforts to reorganize that the Insurance Programs be maintained on an ongoing and uninterrupted basis. The failure to pay premiums when due may affect the Debtor's ability to renew the insurance policies.  If the insurance policies are allowed to lapse, the Debtor could be exposed to substantial liability for damages resulting to persons and property of the Debtor and others,

which exposure could have an extremely negative impact on the Debtor's ongoing business operations. Such a result would also place at risk the estate's assets that are necessary to satisfy secured and unsecured claims.

15.

Pursuant to the terms of many of their leases and commercial contracts, as well as the guidelines established by the United States Trustee, the Debtor is obligated to remain current with respect to certain of its primary insurance policies.

16.

The amounts the Debtor proposes to pay with respect to the Insurance Programs are minimal in light of the size of the Debtor's estates and the potential exposure of the Debtor, absent insurance coverage. Therefore, it is critical that the Debtor continues to maintain its Insurance Programs on an uninterrupted basis and be permitted to pay any obligations in the ordinary course of business and consistent with pre-petition practices. Other bankruptcy courts, within and without this jurisdiction, have held that a debtor is authorized to maintain pre-petition insurance programs pursuant to Sections 363(b) and 105(a) where, as here, a sound business justification exists. See, e.g., In re Foamex Int'l. Inc., Case No. 05-12685 (PJW) (Bankr. D. Del. Sept. 21, 2005); In re Allied Holdings, Inc., Case Nos. 05-12515 – 05-12537 (Bankr. N.D. Ga. Aug. 1, 2005) (Drake, J.); In re Centennial HealthCare Corp., Case No. 02-74974 (Bankr. N.D. Ga. Dec. 20, 2002) (authorizing debtors to maintain existing insurance programs); In re WestPoint Stevens, Inc., Case No. 03-13532 (Bankr. S.D.N.Y. June 3, 2003); In re WorldCom, Inc., Case No. 02-13533 (Bankr. S.D.N.Y. July 23, 2002); In re Enron Corp., et al, Case No. 01-16034 (Bankr. S.D.N.Y. 2001). Given the crucial nature of the Debtor's insurance coverage, the Debtor submits that similar relief is appropriate in these Chapter 11 cases.

### Applicable Banks Should Be Authorized to Honor and Pay Checks Issued and Make Other Transfers with Respect to the Insurance Programs

17.

If the Court grants the relief sought herein, the Debtor requests that all applicable banks and other financial institutions be authorized when requested by the Debtor and in the Debtor's sole discretion, without any duty of inquiry or liability to any party for following the Debtor's instructions, to receive, process, honor and pay any and all checks drawn on the Debtor's accounts to pay the Insurance Obligations, whether those checks were presented prior to or after the Petition Date, and make other transfers provided that sufficient funds are available in the applicable accounts to make the payments.

18.

Authorization of the payment of the Insurance Obligations should not be deemed to constitute the post-petition assumption of any executory contract pursuant to Section 365 of the Bankruptcy Code. The Debtor is in the process of reviewing these matters and reserve all of its rights under the Bankruptcy Code with respect thereto. Moreover, authorization to pay the Insurance Obligations should not affect the Debtor's right to contest the amount or validity of any such charges, in whole or in part.

19.

Based on the foregoing, the Debtor submits the relief requested is necessary and appropriate, is in the best interests of its estate and creditors, and should be granted in all respects.

## Notice

20.

Notice of this Motion has been provided to the Office of the United States Trustee, counsel to the Debtor's pre-petition secured lender, any other party asserting a security interest in assets of the Debtor, the Debtor's twenty (20) largest unsecured creditors, and all parties that have filed requests for notices under Rule 2002 of the Federal Rules of Bankruptcy Procedure as of the date of the Motion.  In light of the nature of the relief requested, the Debtor submits that no further notice is necessary.

## Conclusion

WHEREFORE, the Debtor respectfully requests that this Court:

(a)     enter an order authorizing the Debtor to continue its pre-petition Insurance Programs and pay premiums and related obligations of the Insurance Programs; and

(b)     grant the Debtor such other and further relief as is just and proper.

Respectfully submitted, this 17th day of February, 2017.

                               SCROGGINS & WILLIAMSON, P.C.

| | |
|---|---|
| One Riverside | /s/ Matthew W. Levin |
| 4401 Northside Parkway | J. ROBERT WILLIAMSON |
| Suite 450 | Georgia Bar No. 765214 |
| Atlanta, Georgia 30327 | ASHLEY REYNOLDS RAY |
| T: (404) 893-3880 | Georgia Bar No. 601559 |
| F: (404) 893-3886 | MATTHEW W. LEVIN |
| E: rwilliamson@swlawfirm.com | Georgia Bar No. 448270 |
|    aray@swlawfirm.com | |
|    mlevin@swlawfirm.com | *Proposed Counsel for the Debtor* |

## **Exhibit A**

Insurance Policies

A-1EXPR-01  DJONES

# ACORD CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY): 10/18/2016

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

**PRODUCER**
Snellings Walters Insurance Agency
1117 Perimeter Center West
Suite W101
Atlanta, GA 30338

CONTACT NAME:
PHONE (A/C, No, Ext): (770) 396-9600
FAX (A/C, No): (770) 399-9880
E-MAIL ADDRESS:

| INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURER A: Old Republic Insurance Company | 24147 |
| INSURER B: National Fire & Marine | |
| INSURER C: | |
| INSURER D: | |
| INSURER E: | |
| INSURER F: | |

**INSURED**
A-1 Express Delivery Service, Inc.   1-800
Courier
Inc.
1450 West Peachtree St NW #200
Atlanta, GA 30309

**COVERAGES**    CERTIFICATE NUMBER:    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY <br> ☐ CLAIMS-MADE  X OCCUR | | | MWZY 307081 | 03/01/2016 | 03/01/2017 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 500,000 |
| | | | | | | | MED EXP (Any one person) | $ 10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | X POLICY ☐ PROJECT ☐ LOC ☐ OTHER: | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | | | | | | | $ |
| A | AUTOMOBILE LIABILITY <br> X ANY AUTO <br> ☐ ALL OWNED AUTOS ☐ SCHEDULED AUTOS <br> ☐ HIRED AUTOS ☐ NON-OWNED AUTOS | | | MWTB 306714 | 03/01/2016 | 03/01/2017 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| B | X UMBRELLA LIAB  X OCCUR <br> EXCESS LIAB ☐ CLAIMS-MADE | | | 42-UMO-301921-01 | 10/10/2015 | 03/01/2017 | EACH OCCURRENCE | $ 5,000,000 |
| | | | | | | | AGGREGATE | $ 5,000,000 |
| | DED ☐ RETENTION $ | | | | | | | $ |
| A | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY <br> ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) <br> If yes, describe under DESCRIPTION OF OPERATIONS below | Y/N N/A | | MWC306713 00 | 03/01/2016 | 03/01/2017 | X PER STATUTE ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

**CERTIFICATE HOLDER**

**CANCELLATION**

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

AUTHORIZED REPRESENTATIVE
*[signature]*

© 1988-2014 ACORD CORPORATION. All rights reserved.

ACORD 25 (2014/01)    The ACORD name and logo are registered marks of ACORD